**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

DEVIN KEITT,

                                        Plaintiff,

        v.                                                              No. 10-CV-157
                                                                           (TJM/DRH)

PAUL ANNETTS, Downstate Correctional Facility;
DALE ARTUZ, Clinton Correctional Facility;
JOSEPH BELLNIER, Upstate Correctional Facility;
BRIAN FISCHER, Commissioner of D.O.C.S;
LUCIEN LECLAIRE, Deputy Commissioner of
D.O.C.S; NORMAN BEZIO, D.O.C.S. Inmate
Disciplinary Program Director of Special Housing
Units (SHU); ALBERT PRACK, Acting S.H.U.
Director; STATE OF NEW YORK; L. CORBINE,
Correctional Officer; D. SNYDER, Correction
Officer; S. LaBOUNTY, Correction Officer; T.
DUNNING, Correction Officer; B. BUSH, Correction
Officer; JOHN DOES #1-3, Sergeants; P. DUVALL,
Sergeant; P. CHASE, Clinton Correctional Facility;
JOHN DOE ANCTIL, Upstate Correctional Facility;
JOHN DOE #4, Commissioner Hearing Officer,
Clinton Correctional Facility; and STEVE BULLIS,
Commissioner Hearing Officer, Upstate Correctional
Facility,

                                        Defendants.[1]

_____

**APPEARANCES:**                             **OF COUNSEL:**

DEVIN KEITT
Plaintiff Pro Se
06-A-2122
Attica Correctional Facility
Post Office Box 149

_____

        [1] Defendant corrections officers John Does 1 through 4 have neither appeared nor
been served.  Fed. R. Civ. P. 4(m) requires that a complaint be served upon a defendant
within 120 days after the complaint is filed or the complaint may be dismissed as to any
unserved defendant without prejudice.  See also N.D.N.Y.L.R. 4.1(b). The complaint here
was filed on January 29, 2010.  Compl.  No summons were served upon these
defendants.  More than 120 days have passed since the complaint was filed.  Accordingly,
it is recommended that the complaint be dismissed as to these four defendants without
prejudice pursuant to Rule 4(m) and Local Rule 4.1(b).

Attica, New York 14011

HON. ERIC T. SCHNEIDERMAN                    DOUGLAS J. GOGLIA, ESQ.
Attorney General for the                     Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[2]

   Plaintiff pro se Devin Keitt ("Keitt"), an inmate in the custody of the New York State

Department of Correctional and Community Supervision("DOCCS"), brings this action

pursuant to 42 U.S.C. § 1983 alleging that the State of New York and twenty officials and

employees of DOCCS violated his constitutional rights under the Fourteenth Amendment.

Compl. (Dkt. No. 1).  Keitt also asserts claims pursuant to Title II of the Americans with

Disabilities Act (ADA), 42 U.S.C. § 12101 et seq..  Id. Presently pending are (1) Keitt's

motion for a temporary restraining order (Dkt. No. 49), (2) defendants' cross-motion to

dismiss pursuant to Fed. R. Civ. P. 12 (Dkt. No. 53), and (3) Keitt's motion for leave to file

an amended complaint (Dkt. No. 63).  For the following reasons, it is recommended that

defendants' cross-motion be granted in part and denied in part and that Keitt's motions be

denied.

---

   [2]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

# I. Background

## A. Dyslexia

Keitt has dyslexia, "a disability that substantially limits his ability to read, write, comprehend, work, or perform as an average person . . . ."  Compl. ¶ 23.  Keitt asserts he "requires a voice recorder, books on tape[], or a reader . . . . " as these devices assisted him prior to his incarceration.  Id.  ¶¶ 23-24.  Upon arrival in DOCCS custody, Keitt explained that he could not read due to his disability, yet he was not further tested or evaluated by defendants or provided with the accommodations he previously deemed necessary during his incarceration.  Id.  ¶¶ 28-29, 60.  Keitt contends that this absence of "intake evaluations [and] notification process[es] for diagnosing dyslexic prisoners at . . . intake facilit[ies] . . . ." deprives him of his constitutional rights and reasonable accommodations under the ADA. Id. ¶ 130.

According to Keitt, DOCCS "makes accommodations for illiterate and non-English speaking prisoners . . . [however because they] are able to take notes, in either their own shorthand or native language, and/or are able to conduct research in advance of a hearing proceeding," Keitt claims that their situations are uniquely distinct from his own.  Id. ¶ 133. Additionally, DOCCS has also made accommodations for "sensorially disabled prisoners," but these individuals are housed at specific DOCCS facilities in which Keitt was not housed. Id. ¶ 134.  Moreover, Keitt's needs are different from other inmates and the accommodations DOCCS has already initiated are insufficient to meet his needs as a dyslexic inmate.  Id. ¶¶ 135-36.  Keitt lists additional criteria which should be instituted to provide dyslexic inmates reasonable accommodations during their incarceration.  Id. ¶ 136.

**B. Misbehavior Report dated October 11, 2007**

On October 11, 2007, Keitt received a misbehavior report for participating in an inmate

fight in the yard.  Compl. ¶ 36.  The report by defendant LaBounty stated that he

> observed [Keitt] fighting with unknown inmates.  The fight totaled
> eleven (11) inmates . . . [LaBounty] gave the inmates several direct
> orders to cease fighting.  They were also given several orders over
> the PA System.  They continued fighting. [LaBounty] gave several
> more orders and as staff was responding they also gave orders . . .
> Several inmates were treated for stab [] wounds which required
> treatment at an outside hospital.  Wounds were consistent with
> shank type weapons of which only one (1) was recovered.  All
> inmates were observed throwing rocks at each other.

Id.  ¶ 38; see also Dkt. No. 1-1 at 6 (copy of misbehavior report).  Keitt contends that the

report, as well as its subsequent authorizations by defendant Chase (Compl. ¶ 45) and

prosecution, were all invalid pursuant to DOCCS directives.  Compl.  ¶¶ 40-46.

Keitt was served the misbehavior report on the same day, though it was not read to him.

Compl. ¶ 47.  On October 17, 2007, a disciplinary hearing commenced regarding the

misbehavior report.  Id.  ¶ 50.  "During the hearing the only evidence [Keitt] had to offer was

a request for the identities of who he was allegedly fighting as witnesses . . . ."  Id.  ¶ 51.

No witnesses were called and defendant Doe #4 failed to "make an[] effort to ascertain the

identities to secure testimony from alleged witnesses . . . . "  Id.  ¶ 53.  Keitt was found guilty

and given a disposition of twenty-four months confinement in SHU with a loss of packages,

commissary, telephone, and good-time credits.  Id.  ¶ 55; see also Dkt. No. 1-1 at 24 (copy

of disciplinary disposition).  Keitt appealed the disposition and it was affirmed on December

19, 2007.  Compl.  ¶ 58; Dkt. No. 1-1 at 26 (affirming superintendent's hearing disposition).

Keitt claims that he "was not able to defend against the defective and insufficient [report]

because of unfair and defective process."  Id. ¶ 59.

4

### C. Misbehavior Reports dated November 7, 2008

On November 7, 2008, Keitt's bunkmate, Givens, stopped defendant Corbine on his rounds and informed him that Givens required medical attention because he had fallen while exercising and injured his lip.  Compl. ¶¶ 61-62.  Givens was taken to medical.  Id. ¶ 63.  Shortly thereafter, Keitt was removed from his cell and placed into an observation cell[3] because he had allegedly been involved in an altercation with Givens earlier.  Id. ¶¶ 64-67. Keitt was given the opportunity to give a statement regarding the altercation, but Keitt "refused, stating there was no fight . . . ."  Id. ¶ 66.

Two misbehavior reports were authored on November 7, 2008.  Compl. ¶ 72.  The first, written by defendant Corbine, named Keitt as a participant in a fight with his bunk-mate. Id. ¶¶ 73-74.  It stated that

> The incident was investigated . . . and Keitt had a cut on his left
> hand that was consistent with a fight.  His bunkmate Givens also
> had [a] scrape and abrasions on his hand which were also
> consistent with a fight.  Inmate Givens admitted during investigation
> that there had been a fight instigated by . . . Keitt.  Both inmates
> were seen by medical.

Dkt. No. 1-1 at 28 (copy of misbehavior report); see also Compl. ¶ 77.  Keitt maintains that no fight took place.  Compl. ¶ 78.

 The second stated that Keitt was seen participating in an unauthorized exchange of

---

[3] "While in the observation cell, [Keitt] was only permitted one sheet, and the underwear that he was wearing, and one mattress. . . . [He] was not given any soap, toothpaste or other required items setout in . . . DOC[C]S Directive[s] . . . [including] a shower or . . . running water.  And [he] was required to defecate three (3) times under close observation."  Compl. ¶¶ 68-70.  Log notes from the time Keitt spent in the observation cell indicate that he was checked at fifteen minute intervals, provided medical attention, given his meals, allowed to sleep, and provided with a urinal upon request.  Dkt. No. 1-1 at 89-96.

5

goods in his cell, which was considered smuggling.  Id. ¶ 76.  The report stated that

defendant Synder

> witnessed . . . Keitt sending and receiving items on drag lines.  As .
> . . Keitts pulled in one of the drag lines into his pen with an
> unidentified object on it. Keitts took the object off drag line and
> stepped back in the corner of the holding pen and crouched down
> and appeared to put his hands with the object in his pants.  Then
> Keitts stood up and was fixing or adjusting his pants.  He then
> continued fishing.  At this time [the Sergeant] was notified.

Dkt. No. 1-1 at 30, 32 (copy of misbehavior report); see also Compl. ¶ 80.  Keitt was

ultimately strip frisked as, upon further investigation, alarms were activated by a hand scan

and Boss chair indicating that Keitt might have contraband on his body.  Dkt. No. 1-1 at

112-14.  There is nothing further attached to the complaint which would indicate whether

contraband was discovered.  Keitt contends that both misbehavior reports from November 7

"fail[] to provide[] sufficient notice [because t]he charges . . . were not valid or supported by

its description of [the] incident[s] . . . . "  Compl. ¶ 84.  Defendants Anctil and Bullis both

reviewed and approved the misbehavior reports.  Compl. ¶¶ 89-90.   Keitt was provided with

copies of the misbehavior reports on November 8, 2008, but the reports were not read

aloud to him upon their production.  Id. ¶ 91.

   Disciplinary proceedings were held for both reports on November 19, 2008, during which

Keitt "object[ed] to everything."  Compl. ¶¶ 123-25.  Keitt was found guilty of all charges and

sentenced to seven months confinement in the Special Housing Unit (SHU)[4] and a parallel

---

[4]SHUs exist in all maximum and certain medium security facilities.  The units
"consist of single-occupancy cells grouped so as to provide separation from the general
population . . . ."  N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b).  Inmates are confined in
a SHU as discipline, pending resolution of misconduct charges, for administrative or
security reasons, or in other circumstances as required.  Id. at pt. 301.

loss of package, commissary, and phone privileges.  Id. ¶ 126; see also Dkt. No. 1-1 at 66,

68.  Keitt maintains that "the commencement of the [disciplinary] proceedings was known to

be unfair [and t]he disciplinary measures were overly severe."  Compl. ¶ 127.  Keitt

appealed the disposition, which was affirmed on January 2, 2009.  Id. ¶ 129; see also Dkt.

No. 1-1 at 70-71.

    Keitt filed a grievance about the denial of due process he experienced throughout all of

his disciplinary proceedings.  Dkt. No. 1-1 at 105-106.  Keitt contends that dyslexic inmates

should have special accommodations made for them during the disciplinary proceedings

which would "provide for special inmate assistants such as those given to non-English

speaking, [the] sensorially disabled, or those without disabilities . . . [to] provide . . . auxiliary

aid from the onset to [the] conclusion of disciplinary proceedings . . . . " Id. at 106.  The

grievance was denied based on the fact that, pursuant to DOCCS directives,

>        an inmate shall have the opportunity to pick an employee from an
>        established list of person[s] who shall assist the inmate when a
>        misbehavior report has been issued against the inmate if (1) the
>        inmate is illiterate or non-English speaking.  As such, if the inmate
>        has a learning disability and can not read or write, he has the
>        opportunity to select an assistant to assist him. . . . [T]he assistant's
>        role [is] to speak to the inmate charged, to explain the charges to
>        the inmate, interview witnesses and to report the results of those
>        efforts to the inmate. . . . As such, assistance is available if deemed
>        necessary . . . [Thus] in the future [Keitt] should] select an assistant
>        to assist him when he receives a misbehavior report.

Dkt. No. 1-1 at 108.  Keitt appealed the denial, which was subsequently affirmed by the

Superintendent.  Id. at 110.

### D. Destruction of Personal Property

    On November 9, 2008, Keitt was instructed to pack his belongings to move to a different

cell.  Compl. ¶¶ 92-93.  Keitt's personal property followed him to his new location and remained on the transport cart outside of the cell after Keitt had entered it.  Id. ¶¶ 94-95. Keitt was provided with several of his personal items before being instructed by defendant Bush that Keitt could not keep all of his belongings in his new cell and was able to choose between donating the items, sending them home at his own expense, or having them destroyed.  Id. ¶ 98.  Keitt requested that various items be stored in a locker, donated, and sent home.  Id. ¶¶ 99-100, 102-104.  These requests were recorded and a copy of that form was provided to Keitt, who in turn mailed it to his family members at home.  Id. ¶¶ 105-108. Despite these actions, Keitt's documents, which were primarily legal in nature, were never received by his family members and are presumed to be lost or destroyed.  Id. ¶ 120.

## II. Defendants' Cross-Motion

In his complaint, Keitt argues that his due process rights were violated when defendants provided him with misbehavior reports that were not in compliance with DOCCS directives, subjected him to defective disciplinary proceedings, and destroyed his personal property. Also, liberally construing Keitt's complaint, he alleges that his Eighth Amendment rights were violated when he was subjected to inhumane conditions during his brief confinement in the isolation cell following the alleged smuggling and fighting incidents in November. Lastly, Keitt contends that defendants failed to make reasonable accommodations for his dyslexia in contravention of the ADA.  Defendants contend that Keitt's constitutional claims are meritless, defendants are not obligated to create additional programs for inmates with dyslexia, and Keitt's requests for reasonable accommodations were meritless.

**A. Legal Standard**

Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim.  When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  However, this "tenet . . . is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

Accordingly, to defeat a motion to dismiss, a claim must include "facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (citations omitted).  Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950-51.

When, as here, a party seeks dismissal against a pro se litigant, a court must afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d

Cir.2006); see also Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 191-92 (2d

Cir.2008) ("On occasions too numerous to count, we have reminded district courts that

'when [a] plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally.' "

(citations omitted)).


### B. Eighth Amendment Claims

To the extent that such an Eighth Amendment claim is raised it is without merit.  "The

Constitution does not mandate comfortable prisons but neither does it permit inhumane

ones, and it is now settled that the treatment a prisoner receives in prison and the

conditions under which he is confined are subject to scrutiny under the Eighth Amendment."

Farmer v. Brennan, 511 U.S. 825, 832 (1970). As with other Eighth Amendment claims, a

"plaintiff must satisfy both an objective . . . and subjective test."  Jolly v. Coughlin, 76 F.3d

468, 480 (2d Cir. 1996) (citations omitted).

The objective prong can be satisfied by

> conditions of confinement . . . [which] in combination [constitute an Eighth
> Amendment violation] when each would not do so alone . . . [such as] when
> the conditions have a mutually enforcing effect that produces the deprivation
> of a single, identifiable human need such as food, warmth, or exercise – for
> example, a low cell temperature at night combined with a failure to issue
> blankets.

Davidson v. Murray, 371 F. Supp. 2d 361, 370 (W.D.N.Y. 2005) (citations omitted).

However, "[n]othing so amorphous as overall conditions can rise to the level of cruel and

unusual punishment when no specific deprivation of a single human need exists."  Id. (citing

Wilson v. Seiter, 501 U.S. 294, 304-05 (1991)).  The subjective prong requires "a prison

official [to] have a sufficiently culpable state of mind . . ., of deliberate indifference to inmate

health or safety"  Farmer, 511 U.S. at 834 (citations omitted).

Keitt claims that while in isolation he was only permitted one sheet, a pair of underwear, and a mattress and was prohibited from using the shower and being provided other amenities which were in the DOCCS directives.  As discussed infra, failure to abide by state protocol is not, in itself, a constitutional violation unless such underlying Eighth Amendment rights are also impinged.  However, Keitt has failed to show how these conditions rose to the level of substantial risk of serious harm or denial of an identifiable human need.  See Davidson, 371 F. Supp. 2d at 370.  Keitt makes no contention how these conditions inhibited his ability to eat, sleep, or remain at an adequate temperature.  Additionally, there are no claims for illness or injury.  At best, these are conclusory allegations that are wholly insufficient to state an Eighth Amendment violation.  Moreover, Keitt's claims that he was not offered a shower for two days are also insufficient to state an Eighth Amendment violation.  See  Beckford v. Portuondo, 151 F. Supp. 2d 204, 211 (N.D.N.Y. 2001) (citations omitted) ("Nowhere has it been held that prisoners are entitled to complete and unfettered access to water or showers."); see also Cosby v. Purkett, 782 F. Supp. 1324, 1329 (E.D. Mo. 1992) (holding that access to showers every seventy-two hours is not a violation under the Eighth Amendment).

Accordingly, Keitt has failed to establish the objective element of the analysis and defendants' cross-motion as these claims should be granted.

## C. Fourteenth Amendment

### 1. Failure to Follow DOCS Regulations

"Violations of state law procedural requirements do not alone constitute a deprivation of due process since federal constitutional standards rather than state law define the requirements . . . ." Dixon v. Goord, 224 F. Supp. 2d 739, 744-45 (S.D.N.Y. 2002) (internal quotation marks and citations omitted).  Thus, defendants' actions must be judged based upon the underlying constitutional provisions which are entitled to protection as opposed to those procedures which the state may deem appropriate.  Russell v. Coughlin, 910 F.2d 75, 78 n.1 (2d Cir. 1990) (citations omitted).

In this case, as discussed infra, it is plausible that Keitt's deprivation of liberty did not fully occur pursuant to constitutionally adequate procedures.  Thus, regardless of whether defendants complied with DOCCS directives, those events concerning Keitt's ability to present his defense, call witnesses, and have an assistant should survive defendants' motion to dismiss.  However, some of defendants' actions, namely those concerning the notice Keitt was provided, whether in compliance with DOCCS regulations or not, were sufficient to satisfy due process.  Therefore, defendants' motion to dismiss should be granted with respect to those issues.

### 2. Due Process

As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001). To establish a protected liberty interest, a

prisoner must satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483-84 (1995). This standard requires a prisoner to establish that the deprivation was atypical and significant in relation to ordinary prison life.  Id. at 484; Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir.1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir.1996). The fact that an inmate has been disciplined with a SHU confinement alone is insufficient to establish an atypical and significant deprivation.  The Second Circuit has articulated a two-part test whereby the length of time a prisoner was held in SHU as well as "the conditions of the prisoner's confinement in SHU relative to the conditions of the general prison population" are to be considered.  Vasquez v. Coughlin, 2 F. Supp. 2d 255, 259 (N.D.N.Y.1998).  Where the period of confinement exceeds thirty days, "refined fact-finding" is required to resolve defendants' claims under Sandin.  Colon v. Howard, 215 F.3d 227, 230 (2d Cir. 2000); see also Davis v. Barrett, 576 F.3d 129, 133-34 (2d Cir. 2009) (finding questions of fact under Sandin where plaintiff spent sixty days in SHU).  Thus, as Keitt spent far more than 120 days in SHU confinement, questions of fact exist as to the liberty interest asserted by Keitt.

    While inmates are not given "the full panoply of [due process] rights," they are still afforded procedural process.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  Prisoners are entitled to "advance written notice of charges . . . , a written statement by the factfinders of the evidence relied on and the reasons for disciplinary action, the right to call witnesses and present documentary evidence when doing so does not jeopardize institutional safety . . . and the right to counsel where the inmate is illiterate . . . ."  Powell v. Ward, 392 F. Supp. 628, 629 (S.D.N.Y. 1975) (citations omitted).  In disciplinary settings, inmates requiring counsel may "seek the aide of a fellow inmate, or . . . have adequate substitute aid in the form of help from the staff of from a sufficiently competent inmate designated by the staff."

13

<u>Wolff</u>, 418 U.S. at 570.

Construing the facts in the light most favorable to Keitt, he has alleged that the misbehavior reports failed to provide sufficient written notice of the charges alleged against him (Compl. ¶ 84), none of the misbehavior reports were ever read to Keitt (Compl. ¶¶ 47, 91), Keitt was not provided with requested information during his first disciplinary hearing regarding the identities of individuals against whom he was allegedly fighting (Compl. ¶ 51), Keitt's only proffered defense during his second disciplinary hearing was to object to everything (Compl. ¶ 125), and Keitt was unable to call witnesses and prepare a defense for his hearings (Compl. ¶ 162).

Attached to Keitt's complaint were copies of the misbehavior reports.  These reports detailed appropriate notice of the charges for which Keitt was being tried.  Notice, which comports with due process, "requires more than a conclusory charge; an inmate must receive notice of at lest some 'specific fats' underlying the accusation."  <u>Sira v. Morton</u>, 380 F.3d 57, 70 (2d Cir. 2004) (citations omitted).  In this case, Keitt's misbehavior reports provided such facts.  In his first misbehavior report, Keitt is notified of the date, approximate time, and number of people involved in an altercation in the recreation yard and the remedial steps in which LaBounty engaged prior to additional corrections officers being deployed to regain control of the yard.  Dkt. No. 1-1 at 6.  The same is true for the next two reports which indicate the date and place that Keitt allegedly engaged in an altercation with his bunkmate as well as the date and location where Keitt was allegedly sending and receiving drag lines to smuggle contraband.  Dkt. No. 1-1 at 30, 32.  Accordingly, Keitt's contentions that the written notices that he received failed to comply with due process should be dismissed.  Therefore, defendants' motion to dismiss should be granted as to

14

these claims.

However, Keitt also contends that these reports were not read to him and, as a result, he was unable to marshal a defense during either hearing.  The record is devoid of any indication that Keitt received an inmate assistant during the course of his disciplinary proceedings.  Given that Keitt is comparable to an illiterate inmate and requires additional consideration during the disciplinary proceedings, due process requires the provision of an assistant to explain the charges to him and assist with his defense.  Wolff, 418 U.S. at 570. There is nothing in the record which indicates that such assistance was offered or provided. Given this void of information in the record and construing the facts in the light most favorable to Keitt, it appears plausible that he failed to receive the assistance required to ensure appropriate due process throughout the disciplinary proceedings.  This also hampered Keitt's ability to call witnesses and adequately present his defense.  Such failures also indicate a violation of due process.

Therefore, given these questions of fact,  defendants' motion should de denied as to these claims.

### 3. Confiscation of Property

Keitt claims that defendants Duvall and Bush were involved in the unlawful confiscation, destruction, and loss of his personal property when he was transferred to a new cell. Compl. ¶¶ 94-98.  An inmate has a right not to be deprived of property without due process. However, federal courts do not provide redress for the deprivation of property if there is an adequate state court remedy which the plaintiff can pursue.  Hudson v. Palmer, 468 U.S. 517, 533 (1984).  "An Article 78 proceeding permits a petitioner to submit affidavits and

other written evidence, and where a material issue of fact is raised, have a trial of the

disputed issue, including constitutional claims." <u>Locurto v. Safir</u>, 264 F.3d 154, 174 (2d Cir.

2001) (citations omitted); <u>see also</u> N.Y. C.P.L.R. §§ 7803, 7804; <u>Campo v. New York City</u>

<u>Employees' Ret. Sys.</u>, 843 F.2d 96, 101 (2d Cir. 1988) ("Article 78 . . . provides a summary

proceeding which can be used to review administrative decisions.").  State law also

provides that "[a]ny claim for damages arising out of any act done . . . within the scope of . .

. employment and in the discharge of the duties of any officer or employee of the

department [of corrections] shall be brought and maintained in the court of claims as a

claim against the state."  N.Y. Corr. Law § 24(2).

In this case, Keitt contends that there was an unconstitutional deprivation when his

personal property was allegedly confiscated, lost, or destroyed.  Such claims fail as a

matter of law for several reasons.  First, the Article 78[5] procedure exists and affords an

adequate state court remedy.  Second, because Keitt is suing for damages, he must pursue

his claims here against New York State in the New York Court of Claims pursuant to

Corrections Law § 24.  Thus, the correct venue to litigate these claims is in state court.

Accordingly, defendants' motion should be granted as to this claim.


### D. ADA Claims

Title II of the ADA provides that "no qualified individual with a disability shall, by reason

of such disability, be excluded from participation in or be denied the benefits of . . . a public

_____

[5]N.Y. C.P.L.R. art. 78 (McKinney 1994 & Supp. 2007) establishes the procedure for judicial review of the actions and inactions of state and local government agencies and officials.

entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  The ADA

"applies to inmates in state prisons."  Beckford v. Portuondo, 151 F. Supp. 2d 204, 220

(N.D.N.Y. 2001) (citations omitted).  To state a claim under the ADA, an inmate must

demonstrate that

> (1) he or she is a "qualified individual with a disability"; (2) he or she is being
> excluded from participation in, or being denied the benefits of some service,
> program, or activity by reason of his or her disability; and (3) [the facility that]
> provides the service, program or activity is a public entity.

Clarkson v. Coughlin, 898 F. Supp. 1019, 1037 (S.D.N.Y. 1995); 42 U.S.C. § 12132.

As to the first element, a person is an individual with a qualified disability if "(A) a

physical or mental impairment . . . substantially limits one or more of the major life activities

of such individual, (B) [there is] a record of such an impairment, or (C) [the individual is]

being regarded as having such an impairment."  42 U.S.C. § 12102(2)(A)-(C).

> To determine if an individual meets any of the above criteria, courts
> apply a three part test . . . First, a plaintiff must show that [he or] she
> suffers from a physical or mental impairment.  Second, the plaintiff
> must establish that the activity [he or] she alleges to be impaired
> constitutes a "major life activity."  Third, the plaintiff must show that
> [his or] her impairment "substantially limits" the major life activity
> previously identified.

Smith v. Masterson, 538 F. Supp. 2d 653, 657 (S.D.N.Y. 2008) (internal citations omitted).

The Second Circuit has held that it is important to

> distinguish[] between (I) making reasonable accommodations to
> assure access to an existing program and (ii) providing additional
> or different substantive benefits . . . [since] the disability statutes do
> not require that substantively different services be provided to the
> disabled, no matter how great their need for services may be.
> They require only that covered entities make "reasonable
> accommodations" to enable "meaningful access" to such services
> as may be provided, whether such services are adequate or not.

Wright v. Giuliani, 230 F.3d 543, 548 (2d Cir. 2000) (citations omitted).

17

The severity with which one suffers from dyslexia, determines whether it constitutes a disability under the ADA.  Compare Kamrowski v. Morrison Mgmt. Specialist, No. 05-CV-9234 (KMK), 2010 WL 3932354 (S.D.N.Y. Sept. 29, 2010) (finding that completing work at a slower pace due to dyslexia and attention deficit disorder "do[] not ordinarily qualify as a disability under the ADA.") (citations omitted) with Shaywitz v. American Bd. of Psychiatry & Neurology, 675 F. Supp. 2d 376, 389 (S.D.N.Y. 2009) ("Dyslexia, a learning disability, clearly falls under the rubric of disability as that term is defined by the ADA.") (citations omitted).  In this case, construing the facts in the light most favorable to Keitt, it appears that his dyslexia does constitute a qualified disability because it precludes him from reading or writing.

However, Keitt's claim must be dismissed for multiple other reasons.  First, a claim under the ADA cannot be brought against individuals and, therefore, the claims against the individual defendants under the ADA must be dismissed.  See Fox v. State University of New York, 497 F. Supp. 2d 446, 451 (E.D.N.Y. 2007); Hallet v. New York State Dep't of Corr. Serv., 109 F. Supp. 2d. 190, 199 (S.D.N.Y. 2000).

Second, Keitt's complaint seeks to have DOCCS provide additional or different substantive benefits with his demands to institute a screening and educational/vocational program to identify and assist dyslexic inmates.  A recent case in the Southern District of New York dismissed an identical inmate complaint seeking testing and "a specialized educational program tailored to inmates with dyslexia."  Shaw v. New York State Dept. of Corr. Servs., No. 09-CV-2463 (DLC), 2010 WL 2143672, at *1 (S.D.N.Y. May 27, 2010).  In that case, "the . . . complaint allege[d] only that DOC[C]S refused to create an additional or different substantive educational program tailored to inmates with dyslexia [which was] . . .

18

insufficient to state a claim [because] . . . the additional . . . services . . . would not serve the purpose of leveling the playing field with respect to the educational benefits available to non-disabled inmates." Id., 2010 WL 2143672, at *3.  Similarly, Keitt also seeks the creation of new programs and screening mechanisms to provide substantially different services to those with dyslexia.  This is insufficient to state a cognizable claim under the ADA because while the statute allows "challenge[s to] . . . illegal discrimination against the disabled . . . [it does not permit challenges to] the substance of the services provided to [Keitt] . . . ." Doe v. Pfrommer, 148 F.3d 73, 84 (2d Cir. 1998) (denying claim requesting reasonable accommodations to include a "job coach" as such demands constituted a challenge to the substance of services provided to an individual).

Third, Keitt's allegations that reasonable accommodations were not provided during his disciplinary hearing, and that additional auxiliary devices and protocols were necessary to ensure reasonable access to the hearing, are insufficient.  Keitt not only acknowledges, but also attaches, the DOCCS policy to his complaint which details that inmate assistants shall be available to those who cannot speak, read, or write English (Dkt. No. 1-1 at 11-12)[6] or who, pursuant to the hearing officer's discretion, require assistance where "such assistance would enable the inmate to adequately comprehend the case in order to respond to the charges."  (Dkt. No. 1-1 at 12).  Such assistants "speak with the inmate . . . explain the charges . . ., interview witnesses and . . . report the results of those efforts to the inmate." Dkt. No. 1-1 at 12.  Keitt's disability renders him similarly situated to an inmate with dyslexia and this provision would also address the needs and challenges his inability to read and

---

[6] This portion attached to the complaint is DOCS Directive 4932, Parts 251-4.1-4.2. See N. Y. Comp. Codes R. & Regs. tit. 7, §§ 251-4.1-4.2.

write present.  See Dkt. No. 1-1 at 108, 110 (grievance denials explaining that this provision applied to Keitt's situation as well).  For example, the assistant would read the charges to Keitt and also assist with gathering evidence for presentation during his defense.  Thus, the inmate assistant would provide Keitt with reasonable accommodations for whatever shortcomings he felt he suffered in preparing for the disciplinary hearing.

Instead, Keitt contends that he was entitled to auxiliary aids and other types of recording devices throughout the course of his incarceration.  Requests for such machines and recording devices, much like the request for differently tailored educational and vocational programs, represent a complaint about the substance of the services provided to the inmate.  As previously discussed, such complaints are insufficient to state a violation under the ADA.  The provision of an assistant represented a reasonable accommodation.  It is immaterial that Keitt felt that this was an inadequate accommodation, as that is not the relief which the ADA provides to those individuals with disabilities.  Wright v. Giuliani, 230 F.3d at 548.

Accordingly, defendants' motion should be granted on this ground.


### III.  Motion for Temporary Restraining Order

Keitt filed a motion for a temporary restraining order ("TRO") requesting that he not be subjected to any further disciplinary proceedings since they were violating his constitutional rights.  Dkt. No. 49 at ¶ 4(A).  Additionally, Keitt requested a transfer to an alternate facility which would provide adequate accommodations for his dyslexia.  Id.  ¶ 4(B).  Part of Keitt's allegations supporting his requested TRO was that he required transfer because the law library did not provide appropriate assistance to dyslexic prisoners because despite the

presence of multiple law library clerks, the "law library workers . . . [were] lacking due to the

fact that very few, if any, are actually certified . . . [or] have been to college and show a high

intellectual capacity . . . ."  Keitt Aff. (Dkt. No. 49 at 4-6) ¶ C.

The standard for granting a TRO is well established.

> [A] party seeking such relief must establish two things. First, the
> party must establish a likelihood of irreparable harm if the
> requested relief is denied. Second, the party must establish either
> (a) a likelihood of success on the merits of its case, or (b)
> sufficiently serious questions going to the merits to make them a
> fair ground for litigation, and a balance of hardships tipping
> decidedly in its favor.

Niskayuna Operating Co., LLC v. Sebelius, No. 1:10-CV-1265 (GLS/DRH). 2010 WL

4248852, at *2 (N.D.N.Y. Oct. 26, 2010).

In this case, Keitt's motion for a TRO should be denied.  First, Keitt's request for

defendants not to subject him to further unconstitutional disciplinary hearings amounts to an

injunction compelling defendants to "obey the law", an injunction which the courts disfavor.

See generally New York v. Shinnecock Indian Nation, 560 F. Supp. 2d 186, 189 (E.D.N.Y.

2008) (citing Second Circuit cases and explaining that because injunctions must be neither

broad nor vague, "an injunction must be more specific than a simple command that the

defendant obey the law," in order for it to be effective and in compliance with the Federal

Rules) (citations omitted).

Second, Keitt's request to be transferred to a specific correctional facility is untenable as

inmates have no right to be confined in a prison of his or her choosing.  See Olim v.

Wakinekona, 461 U.S. 238, 245 (1983) ("[A]n inmate has no justifiable expectation that he

will be incarcerated in any particular prison . . . . "); Montayne v. Haymes, 427 U.S. 236, 243

(1976) ("[U]nder the law of [New York] State [inmates] ha[ve] no right to remain at any particular prison facility and no justifiable expectation that he would not be transferred . . . ."). Further, DOCCS "has broad leeway in deciding where to house the inmates under its protective care, be it state or county jail." McFadden v. Solfaro, 1998 WL 199923, at *10 (S.D.N.Y. April 23, 1998).

Third, Keitt's request to have more intelligent and capable law library assistants is also meritless. However, even liberally construing his claims, these are insufficient to establish a constitutional claim. See Lewis v. Casey, 518 U.S. 343, 351 (1996) (explaining that there is no "abstract, freestanding right to a law library or legal assistance, [and that] an inmate cannot establish relevant . . . injury [requiring constitutional protection] simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense."). While Keitt may be frustrated by the caliber of assistance the prison provides, this is insufficient to reach the status of a constitutional violation. Accordingly, because Keitt has no legal entitlement to assistants with a certain level of education or experience, such relief should be denied.

For these reasons, it is recommended that Keitt's motion for a temporary restraining order be denied.

## IV. Motion to Amend Complaint

Keitt filed a motion to amend his complaint. Dkt. No. 63. The proposed amended complaint was substantially the same as the original complaint with a few exceptions. These include an additional exhibit, the affirmation of another inmate indicating that Keitt

was not in a fight with his bunkmate and an additional page probably intended to be part of the initial complaint, but inadvertently omitted, which contains additional requests for accommodations for those inmates with dyslexia.  Dkt. No. 63-3 at 36; Dkt. No. 63-4 at 84-85.

Rule 15(a) provides that a court should grant leave to amend "freely ... when justice so requires."  When exercising its discretion, a court must examine whether there has been undue delay, bad faith, or dilatory motive on the part of the moving party.  Evans v. Syracuse City Sch. Dist., 704 F.2d 44, 46 (2d Cir. 1983) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  A court must also examine whether there will be prejudice to the opposing party.  See, e.g., Ansam Associates Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir.1985) (permitting proposed amendment would be especially prejudicial once discovery has been completed and a summary judgment motion filed).  Finally, where it appears that granting leave to amend is unlikely to be productive or the amendment is futile, it is not an abuse of discretion to deny leave to amend.  Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)(citations omitted).

Keitt's amended complaint is substantially the same as his original complaint. Moreover, the proposed amendments are such insignificant modifications that they serve little functional purpose in assisting the court with further clarifying Keitt's claims. Accordingly, the motion to amend is denied.


**V.  Conclusion**

For the reasons stated above, it is hereby **RECOMMENDED** that

A.  Defendants' cross-motion to dismiss (Dkt. No. 53)  be:

1.**GRANTED** as to Keitt's ADA claims;

2.**GRANTED** as to Keitt's Fourteenth Amendment due process claims alleging improper notice and property destruction;

3.  **GRANTED as to** Keitt's Eighth Amendment claim;

4.  **TERMINATING** this action as to defendants LaBounty, Chase, Corbine, Synder, Anctil, Bullis, Duvall, and Bush; and

5.  **DENIED** in all other regards.

B. The complaint be **DISMISSED** without prejudice as to defendants John Does #1-4;  and

C.  Keitt's motion for a temporary restraining order (Dkt. No. 49) be **DENIED**; and

**IT IS ORDERED** that Keitt's motion to amend his complaint (Dkt. No. 63) be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  July 25, 2011
      Albany, New York

David R. Homer
United States Magistrate Judge